## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 15-10056-CIV-KING/TORRES

MICHAEL T. NESTICO,

       Plaintiff,

vs.

BRIT SYNDICATE #2987, and GLOBAL
MARINE INSURANCE AGENCY,

       Defendants.
_____/

### REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Michael T. Nestico ("Plaintiff")'s First Motion for Partial Summary Judgment Against BRIT Syndicate #2987 ("Plaintiff's Motion") [D.E. 39].[1] The Court has reviewed the Motion, Response [D.E. 44], and Reply [D.E. 62]; the relevant authority; and the record evidence submitted in support of and in opposition to the Motion. The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** for the reasons that follow.

---

[1] Plaintiff's Motion was referred to the undersigned Magistrate Judge for report and recommendation by the Honorable James Lawrence King. [D.E. 41].

## I. BACKGROUND

Plaintiff's Complaint pleads six counts:[2] Counts I and II, Breach of Contract and Estoppel against Brit; Counts IV, V, and VI, Breach of Contract, Negligence, and Breach of Fiduciary Duty against Global Marine Insurance Agency ("Global"); and Count VII, Negligent Misrepresentation against Brit and Global. [*See* D.E. 1]. This is essentially an insurance coverage dispute where Plaintiff claims that Defendants failed to provide him with a copy of his insurance policy and various endorsements thereto prior to the theft of his boat, leaving him unaware of the so-called "GPS endorsement" upon which Brit relied in denying coverage. Plaintiff seeks to recover the value of his boat plus additional damages.

The relevant material facts are as follows.[3] In April 2014, Plaintiff purchased a 41-foot Hydra Sport boat. By July 2014, that boat was stolen. The boat had been insured by a policy underwritten by Brit and obtained by Global, Plaintiff's insurance broker. Under Plaintiff's policy, theft coverage was only available for vessels equipped with active GPS monitoring systems that met certain parameters set forth by the underwriters. Plaintiff's secretary had been made aware of the GPS requirement before requesting coverage was bound and Plaintiff himself was made aware of the same before the Hydra-Sport's theft. An internal April 10, 2014 email confirming that

---

[2] Count III, alleging bad faith against Brit was dismissed as premature. [*See* D.E. 15 at p. 2].

[3] All undisputed facts and all other facts herein are considered in the light most favorable to Brit. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 568–87 (1986).

Plaintiff's policy was bound effective on that date expressly stated that there was "no theft coverage as the GPS installed is NOT accepted." [D.E. 44-3 at p. 14 (emphasis in original)]. A list of approved devices was also emailed to Global, together with the policy on April 11, 2014. Original policy documents were likewise mailed to Global that day.

Before coverage was bound, Plaintiff submitted an application package stating that the Hydra Sport was equipped with a SeaKey GPS tracking device. However, the SeaKey was not activated as SeaKey had gone out of business.

Subsequently, Plaintiff's coverage was cancelled briefly due to lack of an acceptable hurricane plan, and was thereafter reinstated upon submission of an acceptable plan. When Plaintiff's policy was reinstated, Plaintiff's theft plan was also accepted under new terms pursuant to a revised GPS warranty, which stated that coverage for theft would be excluded under the policy unless the boat was "equipped with a monitored GPS vessel tracking security system" meeting three requirements: (1) The system "must be designed for ocean marine vessels and include capability for tracking worldwide;" (2) the system "must have a battery back up;" and (4) the system must have an active monitoring account." [*Id.* at p. 11].

The language of the theft exclusion in Plaintiff's insurance policy reads:

We will not pay for loss . . . caused by theft . . . of the insured watercraft . . . unless the vessel was at the time of the loss accessed by a person making felonious entry into:

> . . .
>
> iii.    A commercial marina location.

3

>> iv.     An approved private residence.
>
> It is further understood and agreed that we will not pay for loss . . . caused by theft . . . of the insured watercraft . . .:
>
>> 1)    when the insured vessel is stored on a lift unless evidenced by the forcible destruction or defeat of a theft protected boat lift mechanism. . . .

[D.E. 39-16 at p. 12].

On July 29, 2014, Plaintiff's boat was reported missing from Plaintiff's residence at 981 Niles Rd., Summerland Key. Subsequent investigation and discovery confirmed that the boat had actually been taken from a lift behind a different residence at 1213 Ocean Drive.

Plaintiff, through this Motion, seeks a ruling that Brit be prevented from relying on the GPS exclusion and theft exclusion provisions in the parties' insurance contract. First, Plaintiff argues that Brit waived its ability to rely on the GPS exclusion because Brit knew that Plaintiff's use of a SeaKey GPS on the Hydra Sport fell short of the policy's GPS requirements, but nonetheless issued Plaintiff's policy and continued accepting premium payments before relying upon the GPS exclusion to later deny coverage; second, that irrespective of waiver, any breach of the GPS exclusion is immaterial because Plaintiff independently located his stolen boat in Mexico and thereby relieved Brit from any prejudice stemming from an insufficient GPS system; and third, that Brit waived the theft exclusion in Plaintiff's policy by failing to raise the exclusion as a defense prior to this litigation, despite having knowledge that the boat lift on which the boat was stored failed to meet the policy's requirements.

4

## II.     ANALYSIS

### A.     *Summary Judgment Standard*

It is well settled that summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may also be appropriate where "after adequate time for discovery . . . [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. And it is the initial burden of the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970).

Once the moving party meets this burden, it becomes the nonmovant's burden to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). And while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 255, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position is insufficient; [rather,] there must be evidence on which the jury could reasonably find for the [non-movant]," *id.* at 242. Likewise, a Court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592–94 (1986); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues and facts are material. A material fact is one that might affect the outcome of the case, *id.* at 248, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Finally, the Court must also determine whether the dispute about a material fact is indeed genuine—that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under Florida law, "[i]t is well settled that the construction of an insurance policy is a question of law for the court," *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 2006), but that "it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court." *Id.* In Florida, a "[d]etermination of a waiver is a factual inquiry for the trier of fact." *In re S & I Invs.*, 411 B.R. 477, 451 (Bankr. S.D. Fla. June 17, 2009) (citing *Matter of Garfinkle*, 672 F.2d 1340, 1348 (11th Cir. 1982) (under Florida law, "[w]aiver is usually a question of fact since it concerns the intent of the parties")); *Rutig v. Lake Jem Land Co.*, 20 So. 2d 497, 499 (Fla. 1945) ("[T]he question of waiver is usually one of fact for consideration by a trial jury on issues properly defined").

6

### B.   *Plaintiff's Motion for Partial Summary Judgment*

#### 1.   *Waiver of the GPS Exclusion*

Plaintiff argues that Brit waived reliance on the policy's GPS exclusion "because Brit knew the exclusion purportedly barred coverage for the theft of [Plaintiff's] boat before [the] boat was stolen," but "affirmatively issued coverage and led [Plaintiff] to believe that the coverage was still in effect." [D.E. 39-1 at p. 8]. Specifically, Plaintiff argues that Brit knew that Plaintiff's Hydra Sport was equipped with a SeaKey GPS system and "knew its position that the SeaKey GPS tracking system did not meet the alleged requirements in the policy," but nonetheless issued coverage and accepted Plaintiff's premium. [*Id.* at p. 9]. Plaintiff posits that Brit's knowledge applies to both iterations of the GPS exclusion—the April 2014 version limiting theft coverage to vessels equipped with GPS trackers from specifically approved companies, and the July 2014 version expanding coverage to all monitored GPS trackers designed for ocean marine vessels with the capability for worldwide tracking, that are equipped with a battery backup, and supported by an active, monitored account.

Factually, Plaintiff supports his claim by relying upon his application, which details that his Hydra Sport was equipped with a SeaKey GPS-based tracking device [D.E. 39-4 at p. 4], and deposition testimony from Brit's corporate representative stating that "the SeaKey was not an approved system prior to the [July] change in the language because it didn't have ocean capabilities; it didn't have a battery backup, and I believe it was never a monitored paid for account from the information that I have read." [D.E. 47 at p. 56]. Legally, Plaintiff relies primarily upon *Johnson v. Life Ins.*

*Co. of Ga.*, 52 So. 2d 813 (Fla. 1951), a Florida Supreme Court case where "[t]he uncontroverted evidence show[ed], as a matter of law, a waiver by the [insurance company] of the forfeiture provisions of the [life insurance] policy . . . relied on as a defense" because the company continued to accept life insurance premium payments from the insured after discovering his serious diagnosis.

Under Florida law, the "elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Bristol West Ins. Co. v. Albertson*, 41 So.3d 378, 381 (Fla. 4th Dist. Ct. App. 2010) (citing *Husky Rose, Inc. v. Allstate Ins. Co.*, 19 So. 3d 1085, 1088 (Fla. 4th Dist. Ct. App. 2009)). At issue, primarily, is whether Brit had actual or constructive prior knowledge of its right to deny Plaintiff coverage based upon Plaintiff's noncompliance with the GPS exclusion, and whether Plaintiff proved waiver as a matter of law based on uncontroverted evidence. *See Johnson*, 52 So. 2d at 816.

Brit, in response, put forth evidence that the requirements of its GPS exclusion changed over time. When Plaintiff's policy was bound, the GPS exclusion required the installation of a specifically approved GPS tracking device. [*See* D.E. 39-8 at p. 2]. Plaintiff's theft plan was initially declined because SeaKey was not an approved device under the original version of the endorsement. [*See id.*]. The theft plan was eventually approved on July 9, 2014, at which point theft coverage was made available for any device "with a monitored GPS vessel tracking system" that was "designed for ocean marine vessels and include[d] capability for tracking worldwide, "ha[d] a battery back

8

up," and was active. [*Id.*]. Brit argues that Plaintiff was informed of this new language and that "theft coverage would be available provided the system satisfied the policy conditions." [D.E. 44 at p. 7].

Brit also supplies evidence that its underwriters were unaware that SeaKey was out of business at the time Plaintiff's policy was bound:

Q: In April of 2014, did Brit know that SeaKey GPS company was not in business?

A: No, underwriters did not know that SeaKey was not.

Q: Did Atlass know?

A: Atlass did not know.

Q: Did anyone at Atlass know?

A: Not to my knowledge.

[D.E. 47 at pp. 76–77]. Brit posits that this testimony and the July 9, 2014 email belie Plaintiff's claim that Brit had either actual or constructive knowledge that Plaintiff's GPS tracking system failed to comport with the GPS exclusion.

Taking all justifiable inferences in Brit's favor as we must, *Anderson*, 477 U.S. at 255, the Court finds that Brit's evidence demonstrates a material issue of fact as to its prior knowledge of its right to deny theft coverage based on Plaintiff's use of an inactive SeaKey device. This case is unlike *Johnson,* where the evidence revealed that the insurance company's agent "took [the insured's] application for the . . . policy . . . and collected premiums thereon until the death of the insured" even after learning "about two months after the policy was issued . . . that the insured had gone to [a]

9

tuberculosis sanitarium . . . and . . . continued to collect the premiums with knowledge of the insured's tubercular condition [until] [t]he insured died," where "it seems to be admitted that tuberculosis was the cause of his death." 52 S.2d at 814.  The record evidence in *Johnson* was bolstered by affidavits from two treating physicians, one of whom diagnosed the insured with pulmonary tuberculosis, leaving it "uncontroverted . . . that the insured was not in sound health at the time of the issuance and delivery of the policy" and "also uncontroverted that the [insurance company's] agent had actual knowledge of the insured's tubercular condition two months after the policy was issue" and six months prior to the insured's death.  *See id.*

Because Plaintiff has not provided such uncontroverted evidence of knowledge, because Brit has demonstrated that a genuine issue of material fact remains as to waiver, and because Florida law favors that waiver be decided by the fact finder, *see Matter of Garfinkle*, 672 F.2d at 1348; *Rutig*, 20 So.2d at 499, the Court recommends that Plaintiff's Motion be denied as to waiver of the GPS exclusion.

        2.       *Materiality of GPS-Exclusion Breach*

Plaintiff also argues that Brit should be barred from relying upon the GPS exclusion because it "is still not a basis to deny coverage because any breach is not material and did not prejudice Brit." [D.E. 39-1 at p. 10].  Plaintiff argues that the GPS exclusion is a condition subsequent, rather than a condition precedent to Plaintiff's policy, because it is a condition pertaining "not to the attachment of the risk and the inception of the policy but to the contract of insurance after the risk has attached and during the existence thereof." [*Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Curran*, 135

10

So. 3d 1071, 10878 (Fla. 2014) (defining conditions subsequent as stated above and conditions precedent as those "to be performed before the contract becomes effective"))]. Brit argues that the exclusion is a condition precedent because "the presence of a monitored system was required before theft coverage would attach." [D.E. 44 at p. 9].

Plaintiff further argues that Brit will be unable to prove prejudice from a material breach because Plaintiff was able to find his boat in Mexico after it was stolen. For support, Plaintiff relies upon his own declaration, which states:

>   7. After my 41-foot Hydra-Sports boat was stolen, I was notified that my boat had been seen near Merida, Mexico.
>
>   8. After working with private companies, I have been in touch with the United States and Mexican authorities.
>
>   9. I was informed that Mexican authorities confirmed that the hull identification numbers and the engine serial numbers on the boat seen near Merida, Mexico matched the hull identification numbers and the engine serial numbers on my 41-foot Hydra-Sports boat.

[D.E. 39-3 at p. 1].

Brit argues, however, that these statements constitute inadmissible hearsay, hence inappropriate for use as support for a summary judgment motion. While the Court has broad discretion in determining whether evidence is admissible, *Equity Lifestyle Props. v. Florida Mowing & Landscape Serv.*, 556 F.3d 1232, 1243 (11th Cir. 2009), and it may consider hearsay in ruling on a motion for summary judgment if the statement can be "reduced to admissible evidence at trial," *Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 911 (11th Cir. 2013) (quoting *Macuba v. DeBoer*, 193 F.3d 1316,

1323 (11th Cir. 1999)), Plaintiff has not demonstrated the feasibility of any such reduction.

Hearsay is an out-of-court statement used to prove the truth of the matter asserted. *See* FED. R. EVID. 801(c). Plaintiff argues that "[t]he Court should reject Brit's claim that the evidence regarding the boat's location is hearsay." [D.E. 62 at p. 10 n.4 (arguing that "[e]ven assuming it is hearsay, the decision Brit cites to support its argument that the 'summary judgment motion cannot be supported by hearsay evidence' actually considered the alleged hearsay evidence for the purposes of summary judgment")]. Since Plaintiff fails to provide any further argument as to how Plaintiff's assertions—which plainly implicate out-of-court statements by unidentified third parties, and which are raised to prove the truth of the statements—may be reduced to admissible evidence at trial, the Court finds them inadmissible for the purpose of this Motion. For that reason, the Court cannot conduct further analysis of the materiality of the GPS exclusion here. This matter is likewise suited for the fact finder.

### 3. Theft Exclusion Waiver and Estoppel

Plaintiff contends that Brit waived and should be estopped from relying on the theft exclusion provision of his policy due to Brit's failure to raise the exclusion as a basis for denying coverage in its initial October 2014 letter, despite Brit's knowledge of the facts supporting its eventual reliance on the exclusion as early as July 2014. Plaintiff further contends that Brit's delay in highlighting the theft provision as a defense to coverage prejudiced Plaintiff by inducing him to file this lawsuit. [*See* D.E. 39-1 at p. 14].

Under Florida law, "while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel." *Starlite Servs., Inc. v. Prudential Ins. Co. of America*, 268 So. 2d 560, 563 (Fla. 4th DCA 1972) (emphasis removed) (opinion adopted by Florida supreme court as its own). As noted above, the "elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Bristol West Ins. Co.*, 41 So.3d at 381.

As noted above, the theft exclusion reads:

We will not pay for loss . . . caused by theft . . . of the insured watercraft . . . unless the vessel was at the time of the loss accessed by a person making felonious entry into:

> . . .
>
> iii.   A commercial marina location.
> iv.   An approved private residence.

It is further understood and agreed that we will not pay for loss . . . caused by theft . . . of the insured watercraft . . .:

> 1)   when the insured vessel is stored on a lift unless evidenced by the forcible destruction or defeat of a theft protected boat lift mechanism. . . .

[D.E. 39-16 at p. 12].

In order to prove Brit's prior knowledge of the facts relevant to the theft exclusion, Plaintiff points to July 2014 statements taken from Todd Baad, the captain of Plaintiff's stolen boat, and David Tollett, one of Mr. Baad's employees. In the

unsworn statement, Mr. Baad admits that Plaintiff's boat was stolen from an unlocked boat lift, which could be accessed and operated by anyone walking onto the dock. [*See* D.E. 39-1 at p. 12; D.E. 39-11 at pp. 35–36]. Mr. Tollett adds that aside from "jammed up" electrical outlet covers, the lift showed no other forcible breaks or damage. [*See* D.E. 39-1 at p. 13; D.E. 39-11 at pp. 49–50]. Plaintiff contends that these two statements definitively prove Brit's early knowledge that the theft of Plaintiff's 41-foot Hydra-Sport was excluded from coverage by the policy's theft exclusion.

Next, to prove that Brit failed to raise the theft exclusion as a basis for coverage denial, Plaintiff relies primarily on the text of Britt's initial coverage denial letter in October 2014. Plaintiff alleges that the letter relies exclusively on the GPS exclusion in denying coverage and makes no mention of the theft exclusion as a basis for denial. Plaintiff also contends that Brit should be barred from using any defenses to coverage not specifically delineated in the original letter. [*See* D.E. 29-1 at p. 13; D.E. 39-5 at pp. 2–4].

Brit responds that Plaintiff fails to demonstrate that Brit had knowledge of the theft provision's applicability to Plaintiff's claim or that Brit intended to relinquish its right to rely upon the exclusion, and further fails to demonstrate that Plaintiff was prejudiced as a result of the purported waiver. [*See* D.E. 14 at pp. 12–13]. Brit contends that its initial investigation uncovered inconsistent facts as to whether the theft exclusion applied, and that further discovery was required before Brit could make a determination as to its soundness as a defense. [*See id.* at pp. 15–16]. Brit also posits that the statements of Mr. Baad and Mr. Tollett constitute inadmissible hearsay

that cannot sustain a motion for summary judgment. [*See* D.E. 52 at p. 3]. As to Plaintiff's estoppel claim, Brit argues that Plaintiff cannot assert in good faith he was induced to file this lawsuit under the belief that the GPS exclusion was Brit's only defense to coverage [*see id.* at p. 13] or that he was prejudiced by the text of the letter [*id.* at pp. 16–17], because it specifically mentioned the theft exclusion and reserved the right to rely upon additional defenses as they became available.

As a preliminary matter, Mr. Baad and Mr. Tollett's statements are appropriately before the Court. In exercising its discretion as to the admissibility of evidence, *see Equity Lifestyle Props.*, 556 F.3d at 1243, the Court may consider hearsay in ruling on a motion for summary judgment if the statement can be "reduced to admissible evidence at trial." *Hetherington*, 511 F. App'x at 911. Mr. Baad and Mr. Tollett's statements, however, are not hearsay because they are offered to prove Brit's knowledge that the Hydra-Sport theft was excluded by the theft provision at the time of the October 2014 letter rather than for their truth. [*See* D.E. 62 at p. 7 n.5].[4] Nonetheless, Plaintiff has failed to demonstrate the absence of a genuine issue of material fact as to whether Brit had actual or constructive knowledge of the applicability of the theft provision to Plaintiff's loss when the denial letter was issued, as to whether Brit intended to relinquish its right to rely on the theft exclusion in denying coverage, and as to whether Plaintiff suffered prejudice.

---

[4] The statements were also taken by Brit's own investigator [*see* D.E. 39-5 at p. 2], weakening any potential arguments concerning their authenticity.

At issue is whether there is a material question of fact as to whether Brit had knowledge of its right to deny coverage to Plaintiff because the Hydra-Sport was stolen from a boat lift that displayed no signs of forcible destruction or defeat of any theft-protection devices, while at an unapproved private residence; and whether Brit intended to relinquish its right to deny coverage pursuant to the theft exclusion at the time of the October 2014 letter. *See Bristol West*, 41 So. 3d at 381. With respect to Brit's knowledge of the theft exclusion's applicability, and taking all justifiable inferences in Brit's favor as we must, *see Anderson*, 477 U.S. at 255, the Court finds that there is. In responding to Plaintiff's Motion Brit affirmatively relies upon specific evidence of record, noting that the unsworn statements given by Mr. Baad and Mr. Tollett are inconsistent with the contemporary Marine Loss Notice, which states that the "boat is missing from [Plaintiff]'s residence," at "981 Niles Rd., Summerland Key, FL" [DE. 44-3 at p. 1]. Furthermore, Brit highlights inconsistencies within Mr. Baad's statement that made it somewhat unclear whether he knew if the boat lift was secured by theft protection devices: Mr. Baad initially stated that the lift had no locks, and later stated that the lift did have locks, but that he did not possess a key and thought that the prior owner may have kept it. [*Compare* D.E. 39-11 at pp. 23, 35 *with id.* at p. 36].

The evidence put forth by Plaintiff and Brit yield a triable issue as to the second element of waiver, as a jury could reasonably rely upon their inconsistencies to determine that the evidence was in conflict at the time of the October letter, and that Brit was therefore not yet aware of the precise location of the Hydra-Sport at the time

of theft.  That the Marine Loss Notice and unsworn statements were created at about the same time, and that Mr. Baad's own initial testimony appears to have internal inconsistencies as to whether the lift itself fit within the specifications allowed by the policy makes the inferences Brit suggests to be drawn from the evidence seem plausible.  *See Matushita Elec.*, 475 U.S. at 592–94.

The Court makes the same finding as to the third element of waiver, Brit's intention to relinquish its ability to rely upon the theft exclusion.  The text of the October 2014 letter specifically cites the entire theft exclusion in its explanation as to why coverage was denied.  [*See* D.E. 39-5 at p. 3].  That the letter discussed the applicability of the policy's GPS exclusion at greater length matters not, as the letter plainly concluded:

> This letter is written entirely without prejudice to any additional rights or defenses which are or might be available to [the insurer] under the captioned watercraft policy.  [The insurer] further continues to reserve each and every one of its rights in this matter.  Any action taken to further investigate or review this matter is not to be construed as a waiver of any of the terms and conditions of the insurance contract.  The rights of the party to the contract remain unaltered as defined therein.  [The insurer] hereby reserves the right to withdraw, amend or revise its position at any time in the future.

[*Id.* at p. 4].

For these reasons, the Court finds that Plaintiff has failed to demonstrate the absence of a genuine issue of material fact with respect to Brit's waiver of the theft exclusion and estoppel from using the exclusion as a defense to coverage, *see Adickes*, 398 U.S. at 153, and that the factual issues should be presented at trial, particularly since Florida law favors that resolution of issues of waiver are to be made by the fact

finder. The Court therefore **RECOMMENDS** that this portion of Plaintiff's Motion be **DENIED**.

### III.   CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment [D.E. 39] be **DENIED**.

Pursuant to S.D.Fla.Mag.J.R.4(b), the parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of any finding in this Report and Recommendation and bar the parties from challenging on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of August, 2016.

/s/   *Edwin G. Torres*

EDWIN G. TORRES
United States Magistrate Judge