UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-10056-CIV-KING/TORRES

MICHAEL T. NESTICO,

      Plaintiff,

vs.

BRIT SYNDICATE #2987, and GLOBAL
MARINE INSURANCE AGENCY,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON BRIT SYNDICATE #2987'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Brit Syndicate #2987 ("Brit")'s Motion for Summary Judgment as to Counts I and II of Plaintiff's Complaint ("Motion") [D.E. 56], Plaintiff's Response to the same [D.E. 69], and Brit's Reply thereto [D.E. 76].[1] Based upon a thorough review of the record and the parties' cited authorities, the Court finds that there are genuine issues of material fact that preclude summary judgment. Accordingly, it is **RECOMMENDED** that Brit's Motion be **DENIED** for the reasons set forth below.

---

[1] Brit's Motion was referred to the undersigned Magistrate Judge by the Honorable James Lawrence King. [See D.E. 79].

## I.  BACKGROUND

Plaintiff's Complaint pleads six counts:[2] Counts I and II, Breach of Contract and Estoppel against Brit; Counts IV, V, and VI, Breach of Contract, Negligence, and Breach of Fiduciary Duty against Global Marine Insurance Agency ("Global"); and Count VII, Negligent Misrepresentation against Brit and Global.  This is essentially an insurance coverage dispute where Plaintiff claims that Defendants failed to provide him with a copy of his insurance policy and various endorsements thereto prior to the theft of his boat, leaving Plaintiff unaware of the so-called "GPS endorsement" upon which Brit relied in denying coverage.  Plaintiff seeks to recover the value of the stolen boat plus additional damages.

### A.  *Factual Background*[3]

The relevant facts to Brit's Motion are as follows.  Plaintiff was the owner of a 41' 2009 Hydra-Sport center console boat, which he purchased in April 2014.  On April 8, 2014, Plaintiff completed and signed a Seawave yacht insurance application to insure his boat.  Plaintiff listed himself as the boat's owner and operator; listed Summerland Key, Florida as its home port; and listed 1021 11th Street, Marathon, Florida, 33050 as its hurricane-season mooring location.  When the application asked for "details of any previous losses," Plaintiff responded, "none"; and when the

---

[2]  Count III, alleging bad faith against Brit, was dismissed as premature.

[3]  All undisputed facts and all other facts herein are considered in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

application enquired whether "any operator [was] involved in a maritime loss in the last 10 years ([i]nsured or not)," Plaintiff marked "no." John Hewlett, one of Brit's underwriters, stated that the inquiry into loss history was not meant to be limited solely to marine loss, and that whether a particular incident warranted disclosure as a prior loss depended on factual details.[4]

The application concluded:

> The completion and signing of this application does not bind the APPLICANT or this COMPANY to affect insurance on this risk; it is submitted for purposes of rating and quotation only. If accepted by this COMPANY it is agreed the information furnished herein shall be the basis of the contract should a policy be issued.

[D.E. 44-6 at pp. 1–2]. Plaintiff informed Brit in his application documents that the Hydra-Sport had a SeaKey GPS based tracking device.

On April 9, 2014, Plaintiff completed and signed an absentee owner information sheet stating that the Hydra-Sport would be moored at Marathon Marina while Plaintiff was out of state. Plaintiff also signed a theft prevention plan on April 9, 2014. In response to the plan's inquiry into where the Hydra-Sport would be kept, Plaintiff submitted: "Vessel will be kept at Marathon Marina[,] 1021 11th St.[,] Marathon[,] FL[,] 33050 until [a] boat lift is installed[,] approximately 6 months[,] then it will be kept at 981 Niles Rd[.,] Summerland Key, Fl on a boat lift." [D.E. 44-5 at p. 1].

---

[4] Mr. Hewlett gave the specific example that a fishing pole lost from a boat and found in the same condition two days later likely need not be identified in the application documents. [*See* D.E. 69-6 at pp. 76–80].

3

Thereafter, the insurance policy was issued on April 10, 2014, effective from April 10, 2014 through April 10, 2015. On its declarations page, the policy listed two attached endorsements and warranties, labeled "GPS Tracking" and "Named Operator Warranty." [*Id.* at p. 7]. Plaintiff claims not to have received a copy of his policy prior to the theft of his boat.

In July 2014, the Hydra-Sport was taken to undergo repairs at 1213 Ocean Drive, Summerland Key, Florida, a vacation home owned by a Massachusetts man named Wesley Gregory. The vacation home had not been disclosed in Plaintiff's application, absentee owner information sheet, or theft prevention plan. Prior to being kept at Mr. Gregory's residence, the Hydra-Sport had been kept off and on at the residence of Todd Baad, the boat's caretaker, at 191 Doubloon Lane, Summerland Key, Florida. Mr. Hewlett testified that it was permissible for the Hydra-Sport to be moved from its storage location for the purpose of repairs.

Two weeks after the Hydra-Sport arrived at Mr. Gregory's residence, Mr. Baad discovered it missing and called the police. He later testified that the Hydra-Sport was never kept at the Marathon Marina during Plaintiff's ownership. Plaintiff admits that he had no contract with the marina but states that he intended to keep the Hydra-Sport there. Plaintiff contends that he had no contract because he had been informed that a contract was unnecessary since plenty of boat slips remained available. Plaintiff claims he was instructed to simply "bring the boat up" to the marina when ready and that he had not "provided Marathon Marina with any financial security information,

4

a credit card number or anything else to secure payment of the slip" for this reason. [D.E. 49 at p. 92].

While at 1213 Ocean Drive, the Hydra-Sport was stored on a lift. When asked whether the lift had any locks on its power switches, Mr. Baad testified, "no." [D.E. 50 at p. 22]. Mr. Baad further testified that after the theft, there was no evidence the electric gate had been damaged or the lock had been defeated [*id.* at p. 35], and that he could not see that any of the switches were damaged or broken [*id.* at p. 36].[5]

Turning back to Plaintiff's application documents, much remains in dispute. The parties disagree about whether the underwriter relied upon information Plaintiff provided in determining whether to accept the risk and in setting the rates to be charged; whether Plaintiff sustained and made claims on prior marine losses and damages; and whether Ben Belyea, co-defendant Global's corporate representative, had adequate personal knowledge to testify concerning Plaintiff's alleged prior losses, particularly since Mr. Belyea's involvement with Plaintiff's insurance commenced in 2014. For example, Plaintiff points to a rating worksheet Brit used to calculate his premium, suggesting that premiums can increase when "a single loss exceeds 20,000 (USD)" or when there are two or more claims within a five year period [*see* D.E. 69-8 at pp. 18–19], along with testimony from Mr. Hewlett that the materiality of a single

---

[5] Plaintiff also testified that the Hydra-Sport was not in a locked garage or building, or in a commercial marina location or "locked commercial boat stored facility" at the time it was taken. [D.E. 49 at p. 79]. Plaintiff's testimony also concedes that the Hydra-Sport was not at an "approved residence" at the time of the reported theft. [*Id.* at p. 80].

5

prior loss would depend on what the loss was, and the nature, amount, and cause of the loss.[6]

Concerning the absentee owner information sheet, the parties dispute whether it was required due to the fact that Plaintiff resided in New Jersey while insuring a vessel in Florida, whether it was designed to elicit information from Plaintiff about the mooring and care of the vessel during his absence from Florida, and whether the information Plaintiff provided therein was relied upon by the underwriter in determining whether to accept the risk and the rates to be charged. The parties also dispute whether Plaintiff's insurance policy as a whole was issued in reliance upon Plaintiff's representations and responses in his application, absentee owner information sheet, and theft-prevention plan.

The parties further disagree as to whether the declarations page of Plaintiff's policy stated that its endorsements and warrantees were to include the GPS tracking and named-operator warrantees; whether a GPS tracking endorsement ever issued along with Plaintiff's policy; and whether Brit disclosed to Global the policy's requirement for an active, monitored GPS system. Also at issue is whether the Hydra-Sport complied with the policy's alleged GPS tracking requirements by having a GPS tracking device security system approved by underwriters with an active monitoring account, battery backup, and worldwide tracking capability at the time the policy

---

[6] Mr. Hewlett also testified that he would give consideration to a risk involving an applicant with two prior marine losses of $100, if both occurred twenty years beforehand. [D.E. 69-6 at pp. 4–5].

6

issued, at the time of theft, or at any time during Plaintiff's ownership of the boat; whether its Seakey tracking device had an active monitored account; and whether Seakey was still in business at the time of Plaintiff's loss. Plaintiff also disputes whether the testimony of Laura Sherrod, Brit's corporate representative, is supported by personal knowledge as to whether Plaintiff's boat had an approved GPS tracking device security system with an active monitoring account at the time the policy was issued.

Turning to the actual loss, it remains in dispute whether the 1213 Ocean Drive residence was unoccupied at the time of the Hydra-Sport theft and whether the Hydra-Sport was being stored there for the two weeks leading up to the date of loss. Plaintiff also challenges Brit's claims that the Hydra-Sport had been kept at the 191 Doubloon Lane address when Plaintiff was in town prior to being moved to 1213 Ocean Drive and that the Hydra-Sport had been kept at either of these addresses from the date of purchase to the date of theft, unless Plaintiff was in town. And the parties disagree about whether there was evidence of forcible destruction or defeat of the boat lift's theft protection devices.

Finally, the parties dispute whether the premium charged for a vessel stored at a marina is higher than that charged for a vessel stored at private residences and whether the policy's alleged theft provision governs the insurance provided to Plaintiff.

7

### B.     *Brit's Motion for Summary Judgment*

Brit argues in support of its summary judgment motion that Plaintiff's misrepresentations about his loss history and the location at which the Hydra Sport would be stored while Plaintiff was out of state were material to the underwriter's willingness to accept Plaintiff's risk, and were material to the terms and conditions under which Plaintiff's policy would be written.  Therefore, Brit argues that rescission under the maritime doctrine of *uberrimae fidei* is warranted.  Brit also contends that Plaintiff's breach of the policy's GPS warranty precludes coverage and relieves Brit from liability.

Brit alleges that the materiality of Plaintiff's misrepresentations is confirmed by testimony from the policy's underwriter, relevant case law, and industry practice; and  that it is undisputed not only that the GPS warranty was part of Plaintiff's policy as issued, but that Plaintiff's policy would not have been issued without it.  Brit contends that the GPS warranty as originally drafted excluded theft coverage "unless the insured watercraft is equipped with a GPS tracking device security system approved by underwriters and the monitoring account is active" [D.E. 56 at p. 11], but was later expanded to warrant theft covered by systems meeting the following parameters: "(1) the system must be designed for ocean marine vessels and include capability for tracking worldwide; (2) the system must have a battery backup; [and] (3) the monitoring account must be active" [*id.*].  Brit claims that compliance with the warranty was a condition precedent to theft coverage, and that the evidence of record

8

proves that Plaintiff's Hydra-Sport was not equipped with a GPS tracking device security system with an active monitoring account at the time of theft.

Plaintiff responds that the motion should be denied because Brit fails to provide evidence of either element of its rescission claim and because under Florida law, a condition precedent to rescission is to tender the premium payment back to the insured, which Brit did not do. Plaintiff also argues that Brith has failed to put forth undisputed evidence as to the GPS warranty's applicability to Plaintiff's contract.[7] Thus, Plaintiff argues, there are factual issues as to whether Brit should be relieved from liability under the policy.

## II. ANALYSIS

### A. *Summary Judgment Standard*

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled as a matter of law," based upon citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(a) & (c)(1)(A). And,

> [t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met

---

[7] As the Court has already concluded that a factual dispute remains as to whether the GPS exclusion was waived, the Court declines to address Plaintiff's argument that Brit waived its ability to rely on the GPS exclusion for a second time here.

9

>    does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The Rules "require[] the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alterations omitted).

### *B.*     <u>Uberrimae Fidei</u>

Brit's first argument is premised on the accurate contention that this Court is to apply federal principals in analyzing maritime policies, even where diversity jurisdiction has been invoked. *See All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000) ("Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law.") (citations omitted); *see also Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 (11th Cir. 2010) ("[W]e look to whether the substance of the contract at issue in the dispute—without regard to the identity of the parties—is reasonably necessary to the conduct of maritime commerce.") (quoting another source); *Doe v. Celebrity Cruises*, 145 F. Supp. 2d 1337, 1340 (S.D. Fla. 2001) ("Even where . . . the parties allege diversity of citizenship as a basis of

10

subject matter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues in the case.").

Applying federal maritime principals, Brit alleges that Plaintiff breached the doctrine of *uberrimae fidei*, which is well-settled as the controlling law of this Circuit. *See HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *see also AIG Centennial Ins. v. O'Neil*, 782 F.3d 1296, 1302–03 (11th Cir. 2015) (the doctrine governs marine insurance policies as "the controlling federal rule even in the face of contrary state authority"). *Uberrimae fidei* "requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk" and renders "a material misrepresentation on an application for marine insurance [as] grounds for voiding the policy." *Id.* This is so even if the material misrepresentation results from mistake, accident, or forgetfulness on the part of the insurer. *See id.* (citing *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984)). Responsibilities under *uberrimae fidei* are the insured's alone, and the underwriter is entitled to rely on the information provided without undertaking its own independent investigation to confirm the accuracy of the insured's representations. *See HIH Marine Servs., Inc.*, 211 F.3d at 1363 ("[T]he duty to disclose is based on the rationale that requiring the marine insurer to investigate each and every claim by those applying for coverage would be both time consuming and expensive.") (internal quotations omitted).

Therefore, if there is no genuine dispute as to whether (1) Plaintiff made a misrepresentation to Brit in applying for a policy of insurance; and whether (2) that misrepresentation was material, *uberrimae fidei* could render void the parties' contract for insurance, *see AIG Centennial Inc.*, 782 F.3d at 1303, and summary judgment as to Counts I and II in Brit's favor would be warranted.

### 1. *Plaintiff's Prior Loss History*

Relying upon Plaintiff's application documents and testimony from co-defendant Global's corporate representative, Brit first contends that Plaintiff misrepresented his loss history when he applied for insurance. Brit cites Plaintiff's Seawave Yacht Insurance Application, which lists Plaintiff as an operator [D.E. 44-6 at p. 1]; answers "none" in response to a request for details of any previous losses including dates, causes, and dollar amounts [*id.*]; and checks "no" in response to whether any of the Hydra-Sport's operators had been involved in a marine loss within ten years [*id.* at p. 2]. Brit also relies upon deposition testimony from Ben Belyea, Global's corporate representative, to prove that despite Plaintiff's representations in his application documents, Plaintiff actually sustained—and made claims on—two previous losses: theft of the lower part of an outboard engine of a previously owned vessel in January 2009, and wind damage in October 2005.[8] Plaintiff contests Mr. Belyea's testimony,

---

[8] Brit also relies on a document labeled "Global Document182" (sic). However, Brit failed to attach a copy of the document to its Motion or Reply, or provide the Court with any guidance as to where it is located in the record. As the Court is therefore unable to conduct a review of its contents, "Global Document182" cannot be considered. See S.D. Fla. L.R. 56.1(a)(2) (mandating that statements of material facts "[b]e supported by specific references to pleadings, depositions, answers to

arguing that the cited portion fails to conclusively support Plaintiff's assertions, and that Brit has failed to establish Mr. Belyea's personal knowledge about Plaintiff's prior boat ownership or the theft, damages, or claims related thereto. Mr. Belyea's testimony states:

> Q: If you direct your attention to page 182, Global 182, in that document. . . . There's a November 1, 2005 entry with respect to a loss. Was that a Hurricane Wilma loss with respect to the Contender?
>
> A: Based on the policy number to the left of it, I would assume so, yes.
>
> Q: So it wasn't a homeowner's loss, it would have been a marine loss?
>
> A: It would have been a loss associated with that policy that's next to it, that policy number.
>
> Q: Again in January of 2009, on page 181, there is a reference regarding an assistant calling to report a claim on the boat January 2, 2009. Would that have been a claim to the Contender?
>
> A: Again yes, it would have been associated with that policy number, which I believe is the Contender.
>
> Q: And that would have been considered another marine casualty or loss under the policy?
>
> A: Correct, that would have been something within our system that would be associated with that.

[D.E. 48 at pp. 180–81].

---

interrogatories, admissions, and affidavits on file with the Court") (emphasis added); Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . ."); Pinson v. Monarch Recovery Mgmt., Inc., No. 12-cv-80480, 2013 WL 961308, at *1 n.1 (S.D. Fla. Mar. 12, 2013).

Considering Mr. Belyea's testimony in the light most favorable to Plaintiff as we must, *e.g., Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 253–55, the Court finds that Brit has failed to demonstrate that no genuine issue of fact remains as to whether Plaintiff failed to disclose prior losses and claims related to October 2005 wind damage and January 2009 theft. Mr. Belyea's testimony fails to directly address either the alleged wind damage or alleged theft of an outboard engine, and without being provided the actual document at issue or any testimony directly addressing the nature and background of Plaintiff's alleged prior losses and claims, the Court finds Mr. Belyea's testimony that he "would assume" and that he "believe[s]" the document relates to "a Hurricane Wilma loss with respect to the Contender" falls short of precluding a genuine dispute of fact. For these reasons, the Court recommends that Brit's Motion for summary judgment under the doctrine of *uberrimae fidei* be denied as to Plaintiff's prior loss history.[9]

### 2. *Location of the Hydra-Sport*

Brit turns once more to Plaintiff's application documents to demonstrate that Plaintiff misrepresented the location of his boat. Plaintiff's application lists Summerland Key, Florida as the Hydra-Sport's home port, and Marathon Marina as its hurricane season mooring location. Plaintiff's theft protection plan further states: "Vessel will be kept at Marathon Marina . . . until boat lift [is] installed

---

[9] As Brit has failed to establish a misrepresentation, the Court need not address materiality.

[(]approximately 6 month[s),] then it will be kept at 981 Niles Rd[.,] Summerland Key, Fl on a boat lift." [D.E. 57 at p. 5].

Brit additionally relies on Mr. Baad's deposition testimony to prove that the theft occurred while Plaintiff's boat was being stored at 1213 Ocean Drive—a location not identified in Plaintiff's application documents—after being moved from Mr. Baad's address, where it had been previously kept "off and on" unless Plaintiff was in town. Mr. Baad testified that the Hydra-Sport was never moored at Marathon Marina during Plaintiff's ownership. Brit also cites Plaintiff's own deposition testimony to prove that the Hydra-Sport was not under contract with Marathon Marina and that Plaintiff had not provided the marina financial security information, a credit card number, or anything else to secure a boat slip.

Plaintiff does not dispute these facts, but adds that he had been informed that he could simply bring the boat by since plenty of slips remained open. Plaintiff argues that a contract was therefore unnecessary. Plaintiff disputes that his boat had been "stored" at 1213 Ocean Drive and that the address needed to be disclosed in his application. Instead, Plaintiff argues that the boat was temporarily undergoing repairs, which was permissible under his contract since he intended to keep the Hydra-Sport at Marathon Marina.

Based on the above, the Court again finds that Brit has failed to conclusively prove that Plaintiff misrepresented the location at which the Hydra-Sport would be kept. Plaintiff disputes Brit's contentions by citing to specific portions of the record, including Mr. Baad's testimony that Plaintiff's boat was temporarily housed at 1213

15

Ocean Drive to undergo repairs, Mr. Hewlett's testimony that doing so was permissible under Plaintiff's policy, and Plaintiff's own testimony that he intended to keep his boat at the marina. The Court finds that these facts present a dispute as to whether Plaintiff truly misrepresented the boat's storage location in his application documents, creating a genuine issue for trial. Therefore, as Brit has failed to prove materiality, the Court recommends that Brit's Motion for summary judgment based on the doctrine of *uberrimae fidei* be denied without the need to address materiality.[10]

### C. *Breach of GPS Warranty*

Alternatively, Brit argues that Plaintiff's failure to have an operational, active monitored GPS Tracking System onboard the Hydra-Sport at the time of loss precludes coverage. Relying on Ms. Sherrod's testimony, Brit contends that it is undisputed that the GPS tracking warranty was part of Plaintiff's policy and that the policy would not have been issued without it. Brit claims that the original warranty read: "Warranted coverage for theft is excluded unless the insured watercraft is equipped with a GPS tracking device security system approved by underwriters and the monitoring account is active."[11] Brit further alleges that Plaintiff had been made aware of the policy's GPS

---

[10] Plaintiff also argues that Brit cannot be entitled to recession because Brit failed to return Plaintiff's premium payments. Since the Court has denied Plaintiff's motion for summary judgment under uberrimae fidei, Plaintiff's argument about premium payments is moot.

[11] For factual support, Brit cites generally to Ms. Sherrod's entire 169 page deposition [see D.E. 56 at p. 11], and to an exhibit from Plaintiff's deposition that does not appear to be a part of the docketed record [compare D.E. 57 at p. 6 (citing "Deposition of Michael Nestico D.E. 49 Exhibit 18 page N-0000418), with D.E. 49 (transcript of Plaintiff's deposition, with no exhibits attached)].

16

tracking requirement, seemingly relying on the entirety of Mr. Belyea's testimony for support. [*See* D.E. 56 at p. 11]. Then, Brit states that the GPS tracking warranty was later updated to provide theft coverage for any system as long as the GPS tracking system met the following parameters: (1) "they system must be designed for ocean marine vessels and include capability for tracking worldwide"; (2) "the system must have a battery backup"; and (3) "the monitoring account must be active." [*Id.*].[12]

Plaintiff disputes that the GPS tracking warranty was part of his policy and repeatedly argues that he did not receive a copy of his policy or the GPS warrant prior to the Hydra-Sport's theft, and argues that Brit has failed to show that any GPS exclusion was breached. Based on Brit's citations to the record in its motion and corresponding statement of facts, the Court agrees.

Pursuant to Local Rule 56.1:

A motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that here does not exist a genuine issue to be tired or there does not exist a genuine issue to be tired, respectively. The statement shall:
. . .

(2) Be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court.

---

[12] Brit, however, relies on a citation to "Brit Production 00405" without providing the Court with any as to where or if the document is located in the record. Therefore, the document will not be considered. See S.D. Fla. L.R. 56.1(a)(2) (mandating that statements of material facts "[b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court") (emphasis added); Chavez, 647 at 1061); Pinson., 2013 WL 961308, at *1 n.1.

17

S.D. FLA. L.R. 56.1(a)(2). Brit relies on alleged exhibits of record without attaching them to its Motion or Reply, or providing the Court with any indication of their location in the docketed record. Therefore, the only relevant undisputed testimony on which the Court may rely is as follows. First, while Plaintiff vehemently objects that he only received a copy of the policy after the theft, Plaintiff does acknowledge that the declarations page states: "Endorsements and Warranties: GPS Tracing (see attached) and Named Operator Warranty (see attached)." [D.E. 69-3 at ¶ 28]. This, however, is insufficient to prove the warranty's contents or any breach of the same. Second, while disputing that Global disclosed the GPS requirement to him, Plaintiff acknowledges that Brit informed Global that the "theft plan is not approved" and the "Sea Key Tracking System is not an approved device." [*Id.* at ¶ 29.]. Again, this proves nothing about the warranty's contents.

    Therefore, because the cited record is so sparse and because Brit has failed to provide sufficient evidence to prove that the GPS warranty provisions cited were in fact part of Plaintiff's insurance policy, and taking the cited testimony in the light most favorable to Plaintiff as we must, the Court finds that Brit has failed to prove that the GPS warranty language allegedly included in the policy documents accurately reflects the parties's agreement. With no undisputed evidence of the warranty's requirements, the Court cannot adequately analyze breach.

    A review of the cited record in the light most favorable to Plaintiff leaves the following questions unanswered: Which, if any, version of the GPS warranty applies to Plaintiff's insurance policy; whether Plaintiff was provided with a copy of the

exclusion; and whether Plaintiff was notified about the exclusion by either defendant. With these questions left unanswered, whether Plaintiff breached the alleged GPS exclusion cannot be decided as a matter of law at this point as genuine issues of material fact have been raised, and more fully developed evidentiary record is needed to resolve the issues. The Court therefore must conclude that for now, genuine issues of material fact exist as to whether Plaintiff breached his policy's GPS warranty such that Brit's liability for the theft of Plaintiff's boat is precluded. We therefore recommend that Brit's Motion be denied.

### *III.  CONCLUSION*

Based upon a thorough review of the record as a whole and the arguments in the parties' motions, we find that Brit has failed to show that there are no genuine issues of material fact for trial.  It is hereby recommended that Brit's Motion for Summary Judgment [D.E. 56] should be **DENIED**.

Pursuant to S.D.Fla.Mag.J.R.4(b), the parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of any finding in this Report and Recommendation and bar the parties from challenging on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of September, 2016.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge